**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**Case No.** _____

---

ENTREPRENEUR MEDIA, INC.,
a California corporation,

                        Plaintiff,

          v.

RUGGED ENTREPRENEUR, LLC, a
Florida limited liability company; and
DOES 1-10,

                      Defendants.

---

## COMPLAINT

Plaintiff Entrepreneur Media, Inc. ("EMI") brings this complaint against

Rugged Entrepreneur, LLC and Does 1-10 for (i) federal trademark infringement and

false designation of origin, and unfair competition in violation of the Lanham Act,

15 U.S.C. § 1051, *et seq*.; (ii) trademark infringement and unfair competition under

Florida common law; and (iii) a violation of the Florida Deceptive and Unfair Trade

Practices Act, and EMI alleges as follows:

## THE PARTIES

1.      EMI is a California corporation with its principal place of business at

18061 Fitch Avenue, Irvine, California 92614.

2.      Defendant Rugged Entrepreneur, LLC ("RE") is a Florida limited liability company, with a principal place of business at 80 Surfview Drive 616, Palm Coast, Florida 32137.

3.      Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants").  Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts.  EMI will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

4.      At all relevant times, RE and Doe Defendants (collectively, "Defendants") acted as the principal, agent, and/or representatives of each of the other Defendants.  Any action by one of the Defendants was within the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

5.      Defendants conduct business throughout the United States, including Florida and within this District, using the RUGGED ENTREPRENEUR mark.

6.      As fully detailed below, Defendants use the RUGGED ENTREPRENEUR mark in a manner that violates EMI's longstanding and strong rights in a number of its ENTREPRENEUR® registered trademarks (the "ENTREPRENEUR Marks").

## JURISDICTION AND VENUE

7.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over EMI's state law claims because they are joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over EMI's state law claims pursuant to 28 U.S.C. § 1367(a) because all of EMI's claims arise out of a common nucleus of operative facts.

8.      This Court has personal jurisdiction over Defendant RE because it is a Florida limited liability company with its headquarters and primary place of business in Florida.

9.      Venue in this Court exists under (i) 28 U.S.C. §§ 1391(b)(1), (c)(2) as Defendant RE resides in this District and is subject to the Court's personal jurisdiction; and (ii) § 1391(b)(2) as a substantial part of the events giving rise to EMI's claims occurred within this District.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

### EMI and Its Successful ENTREPRENEUR® Brand

10.      For over forty years, EMI (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well as offered products and services related, or of interest, to businesses, business owners, and prospective business owners.

11.     EMI's longstanding marketing and sales efforts have been conducted primarily under the ENTREPRENEUR Marks.

12.     EMI is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR name in their titles. ENTREPRENEUR® magazine is published eight times per year with a current print and digital paid circulation, including both subscriptions and single-copy sales, of more than 513,000 copies in the United States and worldwide.

13.     ENTREPRENEUR® magazine routinely features articles about and interviews with some of the biggest names in the business and entertainment community, as shown here:

  

14.     ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EMI's top-secret formula:

4



15.     EMI also publishes and distributes within the United States and worldwide over 200 book titles under the ENTREPRENEUR Marks and ENTREPRENEUR PRESS® imprint:



16.     EMI also conducts seminars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses. These events have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and American Airlines.

5

17.     EMI operates a number of websites to further disseminate and market its content and services, including *entrepreneur.com*, *entrepreneurnetwork.com*, and various social media channels and mobile apps.

18.     The website at *entrepreneur.com* has recently averaged more than fourteen million unique users and more than thirty-six million page views per month.

19.     EMI has also launched apps for iPhones/ iPads and Android:



20.     EMI offers a variety of podcasts, including a podcast offered through *entrepreneur.com*, and a podcast under the ENTREPRENEUR Marks on iTunes, as well as other outlets:



21.     EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships have most recently included: (i)

webinars on topics such as leadership, starting and running a business, and marketing and social media, sponsored by Comcast Business and Oracle NetSuite® and (ii) videos presented by business leaders, such as the co-founder of Netflix® and the president and owner of In-N-Out Burger.  EMI's past co-branding relationships have included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; (iii) Princeton Review (ranking top entrepreneurial schools); (iv) Great Place to Work® (annual Best Small & Medium Workplaces rankings); (v) Palo Alto Software (Entrepreneur Magazine's Business Plan Pro® software); and (vi) an online forms and documents service with SeamlessDocs.

22.     More recently and in particular, EMI has: (i) partnered with Steve Case's *Rise of the Rest*™, a nationwide program to promote entrepreneurship in start-up ecosystems within middle America; (ii) hosted a contest with Canon USA under the rubric *Project Grow Challenge*, in which businesses were awarded money based on how they proposed to grow their businesses through increased productivity and consumer awareness; and (iii) partnered with Chivas Brothers Limited as its exclusive media content partner, in connection with and support of Chivas' annual event known as *The Venture*, a worldwide competition to discover, celebrate, and award with investment dollars extraordinary startup businesses creating positive social change.

23.     Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.

24.     EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Marks.  Through EMI's widespread and continuous use of the ENTREPRENEUR Marks, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI.

25.     The fame and quality of the products and services bearing the ENTREPRENEUR Marks have been widely recognized through industry awards and commendations.  For example, *ENTREPRENEUR* magazine was a finalist in two categories in the 2018 Folio Digital Awards for "Best Website Relaunch" and "Best User Experience."  Additionally, two of EMI's editor-led podcasts recently earned recognition:  the "Problem Solvers" podcast series earned the 2018 Digiday Publishing Award for "Best Use of a Podcast" and the "How Success Happens" podcast series was a finalist in the 2018 Folio Digital Awards.  EMI has also been honored as a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious *Maggie* award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EMI's website at *entrepreneur.com* has been awarded "Outstanding

8

Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EMI has also received multiple Integrated Marketing Awards from MIN for its magazine and website, including being selected as an awards finalist in 2015.

26.    In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising.  EMI's management and staff have also been recognized for their contributions to publishing and the media industry, including such awards and recognitions in 2015 as (i) Folio's designation of an EMI staff writer as one of the "Top Women in Media," and (ii) Fast Company's recognition on Twitter of EMI's Editor-in-Chief as one of the "25 Smartest Women in Media."

<u>**EMI's Intellectual Property Rights**</u>

27.    EMI owns, and has obtained United States federal registrations for, the ENTREPRENEUR Marks, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO.  REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968  August 25, 1987 |

9

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |

10

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises<br>41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032<br>October 30, 2001 |
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet | 4,260,948<br>December 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424<br>June 4, 2013 |
| ENTREPRENEUR | 25: Clothing, namely, shirts; fleece pullovers; | 4,690,619 |

US-DOCS\125631067.1

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
|  | pullovers; shirts; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; T-shirts; Headgear, namely, hats, caps. | February 24, 2015 |

28.    The above registrations are collectively referred to as the "EMI Registrations."

29.    The EMI Registrations are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EMI's entitlement to the exclusive use of the ENTREPRENEUR Marks in commerce throughout the United States on the goods and services listed in the registrations.

30.    Further, the EMI Registrations constitute prima facie evidence that the ENTREPRENEUR Marks are valid, and that EMI is entitled to the exclusive use of the ENTREPRENEUR Marks in commerce throughout the United States on the goods and services listed in the registrations.

31.    EMI, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the ENTREPRENEUR Marks.  In fact, EMI has used the ENTREPRENEUR Marks in commerce for over forty years, having first adopted those Marks for magazines at least as early as May 2, 1978,

which is famous, well-known, and recognized as identifying goods and services that originate from EMI.

32.    Through careful cultivation of its goods and services provided under the ENTREPRENEUR Marks, EMI has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.  Through EMI's widespread and continuous use of its family of ENTREPRENEUR Marks, the ENTREPRENEUR Marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EMI.

33.    Numerous courts across the country have recognized the strength of the ENTREPRENEUR Marks, including:

i.    The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

13

ii.   The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x 212, 215 (9th Cir. 2004).

iii.   The U.S. District Court for the Central District of California recently adopted the holding of the district court in the *Smith* case, and once again found that "the mark ENTREPRENEUR is strong distinctive mark, deserving of significant protection" and that "EMI's ENTREPRENEUR mark is a strong mark" that was infringed by defendant's ENTREPRENEUR PODCAST mark. *See Entrepreneur Media, Inc. v. Eric M. Dye, et al.*, No. 18-cv-0341-DOC (PLAx), Docket No. 22 (C.D. Cal., Sept. 11, 2018).

iv.   The U.S. District Court for the Central District of California has twice held that "the ENTREPRENEUR Mark and EMI's related marks have developed a high degree of distinctiveness and become well-known and recognized as identifying goods and services that originate from EMI." *Entrepreneur Media, Inc. v. Entrepreneurs Opportunities, LLC*, No. 17-cv-01341-JVS-KES, Docket No. 20 (C.D. Cal., Jan. 14, 2018); *Entrepreneur Media, Inc. v. The Innovation Initiative, et al*, No. 17-cv-2261-JVS-KES, Docket No. 23 (C.D. Cal., August 2, 2018) (finding the same); *see also Entrepreneur Media, Inc. v. Darren Casey*, No. 18-cv-01058-JLS-AGR, Docket No. 20 (C.D. Cal., December 20, 2018) (recognizing that EMI's marks are protectable and have been used for over forty years);

14

*Entrepreneur Media, Inc. v. John Doe d/b/a/ Entrepreneur Press*, No. 19-cv-01706-JLS-JDE, Docket No. 23 (C.D. Cal., October 21, 2020) (recognizing the same).  These cases also held that EMI's rights were violated by, respectively, the ENTREPRENEUR OPPORTUNITIES mark, the ENTREPRENEUR TV mark, the FIT ENTREPRENEUR MAGAZINE mark, and the ENTREPRENEUR PRESS mark.

v.     The U.S. District Court for the Central District of California recently found that "the EMI Marks, including the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI such that they are deserving of strong protection."  *See Entrepreneur Media, Inc. v. Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 U.S. Dist. LEXIS 130502, at *15 (C.D. Cal. July 12, 2021) (also finding that EMI's rights were violated by the ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks).

vi.     The U.S. District Court for the District of Colorado held that "the EMI Marks, and in particular the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known, famous, and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection."  *Entrepreneur Media, Inc. v.*

15

*Spencer et al.*, No. 1:17-cv-01637-RBJ, Docket No. 20, at pg. 8 (D. Colo. Dec. 15, 2017) (also finding that EMI's rights were violated by the ENTREPRENEUR SUPPORT mark).

vii.   The U.S. District Court for the District of Connecticut has recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19 (D. Conn. Aug. 19, 2015) (also finding that EMI's rights were violated by the ENTREPRENEUR WEEK mark).

viii.   The U.S. District Court for the District of Maryland has twice recognized the ENTREPRENEUR Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*, No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket No. 47 (Apr. 7, 2014) (also finding that EMI's rights were violated by the ENTREPRENEURS EDGE mark).

ix.   Both a Magistrate Judge and District Court Judge in the Eastern District of Virginia found the ENTREPRENEUR Marks to be distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011) (also finding that EMI's

16

rights were violated by the registration of the *seattleentrepreneur.com* and *austinentrepreneur.com* domain names).

### Defendants' Unauthorized Use of EMI's Marks

34.     Defendants own the *www.ruggedentrepreneur.com* domain name and operate a website there using the RUGGED ENTREPRENEUR mark, as shown below:



(*www.ruggedentrepreneur.com*)

35.     Defendants also own the *www.ruggedentrepreneurnation.com* domain name, and they market, promote, and sell a book on this website using the RUGGED ENTREPRENEUR mark, as shown below:

17



(*www.ruggedentrepreneurnation.com*)

36.     Defendants also own the *www.retailservicesystems.com* domain name, and they advertise their marketing and franchising services on this website using the RUGGED ENTREPRENEUR mark (as shown below).  These franchise opportunities are known as "BoxDrop franchises," and individuals who purchase a franchise are given the ability to operate a mattress and furniture store.



(*www.retailservicesystems.com*)

18



*(www.retailservicesystems.com/about)*



*(www.retailservicesystems.com/about)*

37.     Defendants use the RUGGED ENTREPRENEUR mark to sell franchise opportunities to individuals in Florida and this District.  Specifically, Defendants have sold several "BoxDrop franchises" in Florida, as there are several "BoxDrop franchises" that are currently operating in Florida.

38.     Defendants provide their "BoxDrop franchise" owners with various training materials using the RUGGED ENTREPRENEUR mark.

39.     Defendants also own the *www.boxdropdirect.com* domain name, and they market and sell apparel on this website using the RUGGED ENTREPRENEUR mark, as shown below:



(*www.boxdropdirect.com/rugged-entrepreneur*)

40.     Defendants also host conferences related to their RUGGED ENTREPRENEUR goods and services.  At these conferences, Defendants invite the various "BoxDrop franchise" owners.

41.     Defendants distribute various RUGGED ENTREPRENEUR goods at these conferences, including, but not limited to, apparel.  Defendants also provide

RUGGED ENTREPRENEUR-related services at these conferences, including, but not limited to, training programs.

42.     Under the RUGGED ENTREPRENEUR mark, Defendants offer a variety of goods, including but not limited to branded apparel and a book.

43.     Under the RUGGED ENTREPRENEUR mark, Defendants offer a variety of services, including but not limited to marketing and franchising services.

44.     Defendants target their goods and services to this District by, among other things, targeting residents of this District as consumers, selling products to residents of this District, offering franchise opportunities to residents of this District, and otherwise offering services under the RUGGED ENTREPRENEUR mark in this District.

45.     Defendants also advertise their goods and services under the RUGGED ENTREPRENEUR mark on various social media platforms, including, but not limited to Facebook, Instagram, and Twitter (the "Social Media Accounts") as shown in the below, non-exhaustive examples:



(*www.facebook.com/RuggedEntrepreneur*)



*(www.instagram.com/theruggedentrepreneur)*



*(www.instagram.com/rssruggedentrepreneur)*



*(www.twitter.com/RetailServSys/status/1343929406838943745)*

22



*(twitter.com/RetailServSys/status/1328689286967922688)*

46.     Defendants filed an intent-to-use application (Serial No. 88/147481) with the U.S. Patent and Trademark Office ("USPTO") to register the RUGGED ENTREPRENEUR mark for use with the following goods and services: "clothing, namely, shirts and hats" in Class 25.

47.     Defendants filed an intent-to-use application (Serial No. 88/166902) with the USPTO to register the RUGGED ENTREPRENEUR design mark for use with the following goods and services: "clothing, namely, shirts and hats" in Class 25.

48.     Defendants filed an application (Serial No. 88/180470) with the USPTO to register the RUGGED ENTREPRENEUR mark for use with the following goods and services: "providing a website featuring motivational business

23

information" in Class 35 and "leadership and motivational training for entrepreneurs; business training, namely, training in the development of a business" in Class 41.

49.     Defendants filed an application (Serial No. 88/174151) with the USPTO to register the RUGGED ENTREPRENEUR design mark for use with the following goods and services: "providing a website featuring motivational business information" in Class 35 and "leadership and motivational training for entrepreneurs; business training, namely, training in the development of a business" in Class 41.

50.     EMI opposed each of Defendants' trademark applications for the RUGGED ENTREPRENEUR mark on February 25, 2020 (Opp. No. 91/254437), and this action remains pending before the USPTO.

51.     In light of EMI's renown, online presence, and long history of providing goods and services under the ENTREPRENEUR Mark, EMI is very concerned that consumers will likely be confused and mistakenly believe that Defendants and their goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, EMI.

52.     Defendants will thus reap the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

53.     EMI has attempted to reconcile its concerns with Defendants, including by a letter on August 8, 2019, various follow-up correspondence, and by opposing

the Infringing Application, but Defendants have refused to meaningfully engage in

negotiations, let alone cease use of the RUGGED ENTREPRENEUR mark.

54.    Given Defendants' failure to respond to EMI's concerns, and

Defendants' continuing use of the RUGGED ENTREPRENEUR mark, EMI

brought this suit to fully litigate and resolve the trademark issues between the parties.

### EMI Is Harmed By Defendants' Continuing Infringement & Unlawful Conduct

55.    Defendants' continued use of the confusingly similar RUGGED

ENTREPRENEUR mark in commerce violates EMI's valuable intellectual property

rights in the ENTREPRENEUR Marks and EMI Registrations, and Defendants'

knowing, intentional, willful, and malicious use of this mark is damaging to EMI

and EMI's property.

56.    Defendants have used the RUGGED ENTREPRENEUR mark to

unfairly usurp and capitalize on the value and goodwill of the ENTREPRENEUR

Marks and EMI Registrations.  Defendants are aware of EMI's strong trademark

rights and reputation in the marketplace, but nevertheless, use the RUGGED

ENTREPRENEUR mark to profit from the goodwill associated with the

ENTREPRENEUR Marks and EMI Registrations.

57.    Defendants have intentionally and knowingly capitalized off of

confusion between the ENTREPRENEUR Marks and the RUGGED

ENTREPRENEUR mark, including by providing content almost identical to EMI's

content, as described above.

58.     Due to Defendants' continuing willful infringement and unlawful conduct, EMI is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  EMI had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

59.     EMI's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants. The public interest is best served by granting EMI's requested relief against Defendants.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

60.     EMI incorporates by reference the factual allegations set forth above in paragraphs 1-59.

61.     EMI owns the ENTREPRENEUR Marks and the EMI Registrations. The trademarks reflected in the EMI Registrations are strong and distinctive and designate EMI as the source of all products and services advertised, marketed, sold, or used in connection with the ENTREPRENEUR Marks.  In particular, the ENTREPRENEUR Marks have been used for over forty years and have been recognized by federal courts as a strong and distinctive marks.

62.     EMI is the senior user of the ENTREPRENEUR Marks as it began use of those Marks in interstate commerce prior to Defendants' first use of the confusingly similar RUGGED ENTREPRENEUR mark.

63.     Defendants do not have authorization, license, or permission from EMI to market and sell their products and services under the RUGGED ENTREPRENEUR mark, which is confusingly similar to the ENTREPRENEUR Marks, and which is used by Defendants with products and services that are identical and/or closely related to the particular products and services associated with the ENTREPRENEUR Marks.

64.     Defendants were aware of the ENTREPRENEUR Marks, as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications with Defendants about this matter.  Yet, Defendants continued to use their RUGGED ENTREPRENEUR mark.  Thus, Defendants' unauthorized use of the confusingly similar RUGGED ENTREPRENEUR mark was and is knowing, intentional, and willful.

65.     As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

66.     Defendants' actions therefore constitute trademark infringement.

67.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar RUGGED ENTREPRENEUR mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm EMI.

US-DOCS\125631067.1

68.     Defendants' activities have caused and will continue to cause irreparable harm to EMI, for which it has no adequate remedy at law, because: (i) the ENTREPRENEUR Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and is harming and will continue to substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

69.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

70.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

71.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

28

## SECOND CLAIM FOR RELIEF

## Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

72.     EMI incorporates by reference the factual allegations set forth above in paragraphs 1-59.

73.     The ENTREPRENEUR Marks are strong and distinctive and designate EMI as the source of all goods and services advertised, marketed, sold, or used in connection with those Marks.  In addition, by virtue of EMI's decades of use of the ENTREPRENEUR Marks in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under the ENTREPRENEUR Marks, the ENTREPRENEUR Marks have acquired secondary meaning, whereby the consuming public of this District, the State of Florida, and the United States associate the ENTREPRENEUR Marks with a single source of products and services.

74.     EMI is the senior user of the ENTREPRENEUR Marks as it began use of those Marks in interstate commerce prior to Defendants' first use of the confusingly similar RUGGED ENTREPRENEUR mark.

75.     Defendants were aware of the ENTREPRENEUR Marks, because Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications with Defendants about this matter.  Yet, Defendants continued to use their RUGGED ENTREPRENEUR mark.  Thus, Defendants' unauthorized use of the

confusingly similar RUGGED ENTREPRENEUR mark was and is knowing, intentional, and willful.

76.    Through their use of the confusingly similar RUGGED ENTREPRENEUR mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EMI somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar RUGGED ENTREPRENEUR mark.

77.    In fact, there is no connection, association, or licensing relationship between EMI and Defendants, nor has EMI ever authorized, licensed, or given permission to Defendants to use the confusingly similar RUGGED ENTREPRENEUR mark in any manner.

78.    Defendants' use of the confusingly similar RUGGED ENTREPRENEUR mark will likely cause confusion as to the origin and authenticity of Defendants' website, and related goods and services, and will likely cause others to believe that there is a relationship between Defendants and EMI when there is, in fact, not.

79.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

80.    Defendants' actions thus constitute false designation of origin and unfair competition.

US-DOCS\125631067.1

81.    Defendants' activities have caused, and will continue to cause, irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the ENTREPRENEUR Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing. Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

82.    Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived from their actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

83.    Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

84.    Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus, EMI is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*)

85.    EMI incorporates by reference the factual allegations set forth above in paragraphs 1-59.

86.    Defendants have engaged in the conduct of trade and commerce in the State of Florida.

87.    As described above, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of any trade or commerce.

88.    Defendants' use of the confusingly similar RUGGED ENTREPRENEUR mark on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and EMI.

89.    Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of EMI's reputation and the substantial goodwill it has built up in the ENTREPRENEUR Marks.

90.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

91.    Unless an injunction is issued enjoining any continuing or future use of the RUGGED ENTREPRENEUR mark by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage EMI. EMI has no adequate remedy at law.  Accordingly, EMI is entitled to an injunction.

92.    EMI is entitled to recover its reasonable attorneys' fees and costs pursuant to Fla. Stats. § 501.211 and § 501.2105.

32

## FOURTH CLAIM FOR RELIEF

### Florida Common Law Unfair Competition and Trademark Infringement

93.    EMI incorporates by reference the factual allegations set forth above in paragraphs 1-59.

94.    EMI has valid and protectable common law rights in the ENTREPRENEUR Marks.

95.    EMI is the senior user of the ENTREPRENEUR Marks.

96.    EMI has expended significant time and expense in developing the ENTREPRENEUR Marks and the high-quality products and services it markets and sells under those marks.  The ENTREPRENEUR Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

97.    Defendants' use of the confusingly similar RUGGED ENTREPRENEUR mark on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and EMI.

98.    Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of EMI's reputation and the substantial goodwill it has built up in the ENTREPRENEUR Marks.

99.    Through their wrongful conduct, Defendants have misappropriated EMI's efforts and are exploiting the ENTREPRENEUR Marks and EMI's reputation to market and sell their services under the RUGGED ENTREPRENEUR mark.  These actions constitute unfair competition.

33

100.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

101.    Unless an injunction is issued enjoining any continuing or future use of the RUGGED ENTREPRENEUR mark by Defendants, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage EMI. EMI has no adequate remedy at law.  Accordingly, EMI is entitled to an injunction.

102.    Defendants have acted willfully, intentionally and maliciously, such that EMI is entitled to punitive damages.

## PRAYER

WHEREFORE, EMI prays for the following relief:

A.    An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

      i.    cease all use and never use the RUGGED ENTREPRENEUR mark, the ENTREPRENEUR Marks, or any other mark likely to cause confusion with the ENTREPRENEUR Marks, including any misspelling or variation of the ENTREPRENEUR Marks, in, on, or with any products or services, or in connection with the, advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on the Social Media Accounts;

ii.      never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

iii.      never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, EMI;

iv.      never register any domain name that contains any of the ENTREPRENEUR Marks or any misspelling or variation of those Marks, or any domain name confusingly similar to any of the ENTREPRENEUR Marks;

v.      transfer to EMI all domain names in the Enjoined Parties' possession, custody, or control that include the word "entrepreneur" or any misspelling or variation thereof, are otherwise confusingly similar to or contain any of the ENTREPRENEUR Marks, or were used in connection with the RUGGED ENTREPRENEUR mark, including but not limited

35

to *www.ruggedentrepreneur.com*, *www.ruggedentrepreneurnation.com*,

*www.boxdropdirect.com*, and *www.retailservicessystems.com*;

vi.     cease all use of the Social Media Accounts and any similar

accounts or social media websites, and never register or attempt

to register any social media account that contains the RUGGED

ENTREPRENEUR mark, any of the ENTREPRENEUR

Marks, or any misspelling or variation of those Marks, or any

other social media account confusingly similar to any of the

ENTREPRENEUR Marks;

vii.     transfer to EMI, disable, or delete the Social Media Accounts

that were used to promote the RUGGED ENTREPRENEUR

mark, including all such accounts in Defendants' possession,

custody, or control that include the word "entrepreneur" or any

misspelling or variation thereof, or are otherwise confusingly

similar to or contain any of the ENTREPRENEUR Marks;

viii.     never unfairly compete with EMI in any manner whatsoever, or

engage in any unfair, fraudulent, or deceptive business practices

that relate in any way to the production, distribution, marketing,

and/or sale of products and services bearing any of the

ENTREPRENEUR Marks or any other mark likely to cause

confusion with the ENTREPRENEUR Marks, including any

misspelling or variation of those Marks; and

ix.      never apply for or seek to register the RUGGED

ENTREPRENEUR mark, any of the ENTREPRENEUR

Marks, or any other mark likely to cause confusion with the

ENTREPRENEUR Marks, including any misspelling or

variation of those Marks.

B.      An order, pursuant to 15 U.S.C. § 1118, requiring the Enjoined Parties
to deliver and destroy within thirty days all prints, advertising, packaging, goods, and
other materials bearing the RUGGED ENTREPRENEUR mark.

C.      An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined
Parties to file with the Court and serve upon EMI's counsel, within thirty (30) days
after service of the order of injunction, a report in writing under oath setting forth in
detail the manner and form in which the Enjoined Parties have complied with the
injunction.

D.      To give practical effect to the Court's injunction, an order that the social
networking service or entity (e.g., Facebook) related to any of the social media
accounts subject to this Order shall, within fourteen (14) days of receipt of the Order,
transfer, disable, or otherwise cancel those subject accounts at EMI's request if the
Enjoined Parties have not already done so.

E.      To give practical effect to the Court's injunction, an order that the
Registry or Registrar for any of the foregoing domain names shall, within fourteen
(14) days of receipt of the Order, transfer or otherwise assign those subject domain
names to EMI if the Enjoined Parties have not already done so.

F.      An order finding that, by the acts complained of above, Defendants have infringed EMI's federally-registered trademarks in violation of 15 U.S.C. § 1114.

G.      An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

H.      An order finding that, by the acts complained of above, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.

I.      An order finding that, by the acts complained of above, Defendants have engaged in common law unfair competition and trademark infringement.

J.      An order awarding EMI damages as follows:

       i.      Pursuant to 15 U.S.C. § 1117(a), EMI's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages; and

      ii.      Punitive damages pursuant to Florida common law.

K.      An order pursuant to 15 U.S.C. § 1117(a), finding that this is an exceptional case and awarding EMI its reasonable attorneys' fees.

L.      An order pursuant to Fla. Stat. § 501.2105, awarding EMI its reasonable attorneys' fees and costs.

M.     An order pursuant to 15 U.S.C. § 1117(a), awarding EMI all of its costs, disbursements, and other expenses incurred due to Defendants' unlawful conduct.

N.     An order awarding EMI pre-judgment interest.

O.     An order awarding EMI such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  August 12, 2021                    Respectfully submitted,

*/s/ Gerry A. Giurato*
Gerry A. Giurato
Florida Bar No. 0032548
MURPHY & ANDERSON, P.A.
1501 San Marco Boulevard
Jacksonville, Florida 32207
Telephone: (904) 598-9282
Facsimile: (904) 598-9283
ggiurato@murphyandersonlaw.com
*Counsel for Plaintiff*

*/s/ Patrick Justman*
Patrick Justman (Motion to appear pro hac vice to be filed)
Jennifer L. Barry (Motion to appear pro hac vice to be filed)
Adam A. Herrera (Motion to appear pro hac vice to be filed)
LATHAM & WATKINS, LLP
12670 High Bluff Drive
San Diego, CA 92130

39

Tel:  858.523.5400
Fax:  858.523.5450
Patrick.Justman@lw.com
Jennifer.Barry@lw.com
Adam.Herrera@lw.com
*Lead Counsel for Plaintiff*