## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ENTREPRENEUR MEDIA, INC.,

     Plaintiff/Counter–defendant,

vs.                           Case No.  3:21-cv-784-MMH-PDB

RUGGED ENTREPRENEUR, LLC,

     Defendant/Counter–plaintiff,

_____/

### O R D E R

**THIS CAUSE** is before the Court on Defendant Rugged Entrepreneur, LLC's Motion to Transfer Venue with Supporting Memorandum of Law (Doc. 29; Motion), filed on December 7, 2021.  In the Motion, Rugged Entrepreneur, LLC (RE) requests that the Court transfer this case to the Eastern Division of the United States District Court for the Southern District of Ohio.  Motion at 1.  In support of the Motion, RE attaches a declaration from Carlton Scott Andrew, RE's sole owner, as well as a trademark licensing agreement between RE and Retail Service Systems, Inc. (RSS).  See Declaration of Carlton Scott Andrew in Support of Defendant's Motion to Transfer Venue (Doc. 29-1; Andrew Decl.) & Rugged Entrepreneur LLC Non-Exclusive Trademark License (Doc. 29-2; RSS Trademark Agreement).  On December 21, 2021, Plaintiff Entrepreneur Media, Inc. (EMI) filed a response

in opposition to the Motion, <u>see</u> Plaintiff Entrepreneur Media, Inc.'s Opposition to Motion to Transfer Venue to the Southern District of Ohio (Doc. 35; Response), and in support, attached a declaration of counsel for EMI. <u>See</u> Declaration of Patrick C. Justman in Support of Plaintiff's Opposition to Motion to Transfer Venue (Doc. 35-1; Justman Decl.). With leave of Court, on January 21, 2022, RE filed a reply. <u>See</u> Reply of Defendant Rugged Entrepreneur, LLC in Support of its Motion to Transfer Venue (Doc. 43; Reply). Accordingly, this matter is ripe for resolution.

## I.    Factual Background and Procedural History

EMI initiated the instant action on August 12, 2021, by filing its four count Complaint (Doc. 1) against RE in the Jacksonville Division of the United States District Court for the Middle District of Florida (the "Florida Action"). EMI is a California corporation with its principal place of business in Irvine, California. <u>See</u> Complaint ¶ 1. RE is a Florida limited liability company with its principal place of business in Palm Coast, Florida. <u>Id.</u> ¶ 2. EMI asserts that "[v]enue in this Court exists under" 28 U.S.C. §§ 1391(b)(1), (c)(2) and § 1391(b)(2) because RE resides here and "a substantial part of the events giving rise to EMI's claims occurred within this District." <u>Id.</u> ¶ 9.

In the Complaint, EMI alleges that for over forty years, it "has published magazines and books . . . as well as offered products and services related, or of interest, to businesses, business owners, and prospective business owners"

using its ENTREPRENEUR® registered trademarks (the "ENTREPRENEUR marks"). Id. ¶¶ 6, 10-11. According to EMI, RE uses its RUGGED ENTREPRENEUR mark to market and promote a book, provide opportunities to franchise a mattress and furniture store, sell apparel, host conferences, offer services, and advertise on social media, in a way that will likely cause confusion with EMI's ENTREPRENEUR marks. See generally ¶¶ 37-45; 51. EMI asserts that it suffers harm from RE's purported infringement because RE is unfairly usurping and capitalizing on the value and goodwill of EMI's trademark. See id. ¶¶ 55-59. Accordingly, EMI brings this action to protects its goodwill. See id. In the Complaint, EMI asserts four claims: (1) a federal claim of trademark infringement under 15 U.S.C. § 1114; (2) a federal claim of unfair competition/false designation of origin under 15 U.S.C. § 1125(a); (3) a state law claim under the Florida Deceptive and Unfair Trade Practices Act, Florida Statute section 501.201, et seq. (FDUTPA); and (4) a Florida common law claim for unfair competition and trademark infringement. See generally id.

Prior to initiating the Florida Action, EMI, on March 1, 2021, filed suit against RE, RSS, Mr. Andrew, and BoxDrop, LLC (BoxDrop) in the Southern Division of the United States District Court for the Central District of California (the "California Action"). See Entrepreneur Media, Inc. v. Rugged Entrepreneur, LLC, et al., Case No. 8:21-cv-390, Docket No. 1 (March 1, 2021). In the California Action, EMI previously asserted similar claims of trademark

infringement and unfair competition/false designation of origin under federal law as well as common law claims for trademark infringement and unfair competition. See generally id. All defendants moved to dismiss the California Action arguing that the court lacked general and specific personal jurisdiction over them. See Entrepreneur Media, Inc. v. Rugged Entrepreneur, LLC, et al., Case No. 8:21-cv-390, Docket No. 20 (Jun. 9, 2021). In an order dated July 14, 2021, although the court determined that it had personal jurisdiction over defendant RSS, the court declined to exercise personal jurisdiction over defendants BoxDrop, RE, and Mr. Andrew, and granted EMI 30 days to plead additional facts in support of personal jurisdiction over those defendants. See generally Entrepreneur Media, Inc. v. Rugged Entrepreneur, LLC, et al., Case No. 8:21-cv-390, Docket No. 25 (July 14, 2021).

Rather than plead additional facts in support of jurisdiction over Defendants BoxDrop, RE, and Mr. Andrew, on August 12, 2021, EMI initiated the instant action against RE and filed a similar lawsuit in the Southern District of Ohio (the "Ohio Action") against BoxDrop and Mr. Andrew.[1] See Entrepreneur Media, Inc. v. Boxdrop, LLC, et al., Case No. 2:21cv4162, Docket No. 1 (Aug. 12, 2021). EMI also filed a second amended complaint in the

---

[1] EMI additionally brought both actions against ten unnamed Doe Defendants. By separate order the Court has dismissed, without prejudice, the claims against the Doe Defendants. See Order (Doc. 46).

California Action against only RSS.  See Entrepreneur Media, Inc. v. Rugged Entrepreneur, LLC, et al., Case No. 8:21-cv-390, Docket No. 28 (Aug. 12, 2021). In the Ohio Action, EMI brings the same federal claims against BoxDrop and Mr. Andrew as well as claims under the Ohio Deceptive Trade Practices Act (ODTPA) (Ohio Revised Code section 4165 et seq.) and Ohio common law.  See generally Entrepreneur Media, Case No. 2:21cv4162, Docket No. 1.   On December 6, 2021, RSS filed a motion requesting that the California Action be transferred to the Southern District of Ohio.  See Entrepreneur Media, Inc., Case No. 8:21-cv-390, Docket No. 44 (Dec. 6, 2021).  On December 20, 2021, the Honorable James V. Selna of the Central District of California entered an order granting the defendants' motion and transferring the California Action to the Southern District of Ohio.   See Entrepreneur Media, Inc. v. Rugged Entrepreneur, LLC, No. SACV2100390JVSADSX, 2021 WL 6618611, at *3 (C.D. Cal. Dec. 20, 2021).  Thereafter, on January 11, 2022, the Honorable Edmund A. Sargus Jr. of the Southern District of Ohio consolidated EMI's case against RSS with the Ohio Action against Mr. Andrew and BoxDrop.  See generally Entrepreneur Media, Case No. 2:21cv4162, Docket No. 21.  The day after RSS filed the Motion to transfer the California Action to Ohio, RE filed the instant Motion to transfer this action to Ohio as well.  See generally Motion.

## II.    Applicable Law

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a). The standard for transfer under § 1404(a) gives broad discretion to the trial court.  See Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347,1351 (M.D. Fla. 1999).[2]   In considering whether to transfer a case pursuant to § 1404(a), in the absence of consent among the parties, a district court must engage in a two-step inquiry.  See 28 U.S.C. § 1404(a); Eye Care Int'l, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000); Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). The court must first determine, as a threshold matter, whether the case might have been filed in the proposed district.  See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., No. 806-CV-1746-T-27MAP, 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006); see also Colo. Boxed Beef Co. v. Coggins, No. 8:07-cv-00223-T-24-MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007).  Next, the court must consider "whether the transfer would be for the convenience of the parties

---

[2]    The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

and witnesses and in the interest of justice." <u>Eye Care Int'l, Inc.</u>, 119 F. Supp. 2d at 1318; <u>see also</u> <u>Bookworld Trade</u>, 2006 WL 3333718, at *1.  In making this determination, the court evaluates a number of factors.  <u>See</u> <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988).  These factors include the following:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

<u>Colo. Boxed Beef Co.</u>, 2007 WL 917302, at *3 (quoting <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).  It is the movant's burden to establish that a case should be transferred to the suggested forum in the interests of convenience and justice.  <u>See</u> <u>In re Ricoh Corp.</u>, 870 F.2d 570, 573 (11th Cir. 1989) ("[T]he burden is on the movant to establish that the suggested forum is more convenient."); <u>Colo. Boxed Beef Co.</u>, 2007 WL 917302, at *3. Moreover, "[i]n determining the propriety of transfer, the Court must give considerable weight to Plaintiff's choice of forum.  Only if the Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should [a c]ourt disregard the choice of forum and transfer the action." <u>Response Reward Sys., L.C. v. Meijer, Inc.</u>, 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002) (internal citations omitted); <u>see</u>

also In re Ricoh Corp., 870 F.2d at 573 ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference."); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").[2] Upon consideration of all of the factors, the Court determines that transfer of the case is warranted.

## III.   Discussion

### a. Could the case have been brought in the Southern District of Ohio?

In the Motion, RE argues that the instant action could have been brought in the Southern District of Ohio.  Motion at 4-5.  In support, RE notes that it entered into a licensing agreement with RSS in Ohio that allows RSS to use the RUGGED ENTREPRENEUR mark in its course of business, and Ohio's long arm statute permits its state courts to exercise specific personal jurisdiction over claims arising from a person's transacting business in Ohio. Id. at 5.  Thus, RE contends it is subject to specific personal jurisdiction in Ohio by virtue of its licensing agreement with RSS.  Id.  In the Response, EMI contends that an Ohio court does not have jurisdiction over RE because RE is a Florida company with its principal place of business in Florida and "Defendant's infringing actions, as

---

[2]     28 U.S.C. § 1404(a) was amended in 2011 to permit transfer "to any district or division to which all parties have consented."  While these cases were decided prior to this amendment, their analysis of § 1404(a)'s convenience and public interest factors remains applicable.

alleged in the complaint, took place in Florida, not Ohio." Response at 5.  In the Reply, RE restates its position in the Motion and additionally argues the exercise of jurisdiction over RE by the Southern District of Ohio would not offend due process considerations.  See Reply at 2-4.

"A federal district court in [Ohio] may exercise personal jurisdiction over a nonresident defendant to the same extent that a [Ohio] court may, so long as the exercise is consistent with federal due process requirements."  See Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).  "If both [Ohio] law and the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant."  Id.  Thus, to determine whether an Ohio court could exercise personal jurisdiction over RE, the Court must engage in a two-part inquiry.  See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004).  First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Ohio]'s long-arm statute."  Id. (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)). Second, the Court must consider whether exercising personal jurisdiction over Defendants is consistent with "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"  Id. (quoting Sculptchair, Inc., 94 F.3d at 626).  "Only

if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Robinson, 74 F.3d at 256 (internal quotations omitted).

The reach of Ohio's long-arm statute is a question of Ohio law. See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1271 (11th Cir. 2002). Thus, this Court must construe the long-arm statute as would the Ohio Supreme Court, and, absent some indication that the Ohio Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Ohio's intermediate courts. See id. The Court notes that

> [p]ersonal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state.   General jurisdiction is proper only where a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.

Kauffman Racing Equip., L.L.C. v. Roberts, 2010-Ohio-2551, ¶ 46, 126 Ohio St. 3d 81, 87–88, 930 N.E.2d 784, 792. "[RE] does not allege that [it] has continuous and systematic contacts in Ohio such that [it] would be amenable to jurisdiction for claims arising outside of Ohio." See id.  Instead, RE contends that Ohio has specific jurisdiction which applies "'when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'"  Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall (1984), 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404, fn. 8.).  The Ohio

long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state." Ohio Rev. Code § 2307.382(A)(1).

> Under Ohio law, R.C. 2307.382(A)(1) is "very broadly worded" and permits jurisdiction over nonresident defendants "who are transacting any business in Ohio." (Emphasis sic.) Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St. 3d 73, 75, 559 N.E.2d 477. The Ohio Supreme Court has noted that the word "transact" means "to carry on business," and "to have dealings," and it is broader than the word "contract." Id. Moreover, "a person 'transacts business' in Ohio if the business operations set in motion by the defendant have a 'realistic impact' on Ohio commerce." Priess v. Fisherfolk (S.D.Ohio 1982), 535 F.Supp. 1271, 1274.

State ex rel. Atty. Gen. v. Grand Tobacco, 2007-Ohio-418, ¶ 18, 171 Ohio App. 3d 551, 558, 871 N.E.2d 1255, 1260.

In arguing that "there does not appear to be specific jurisdiction over Defendant [RE] in Ohio," EMI points to RE's status as a Florida limited liability company, Mr. Andrew's statement that two of the four domain names at issue are operated out of Florida and Tennessee, and a national conference held in Florida. Response at 5-6. However, RE's business contacts with Florida are not relevant to the instant inquiry regarding whether this suit arises out of RE transacting business in Ohio. What matters are RE's contacts with Ohio. RE entered into a licensing agreement with RSS, an Ohio corporation, "to use the [RUGGED ENTREPRENEUR marks] in connection with the sale of apparel,

including hats and shirts, on: (1) the website www.ruggedentrepreneur.com; and (2) in person to the various persons and businesses with which Licensee enters into license and/or franchise agreements (and their family members, employees, and independent contractors)." See RSS Trademark Agreement at 1.  RE and RSS also agreed that the parties conduct under the trademark agreement would be governed by Ohio law.  See id. at 2.  Mr. Andrew is the Chief Executive Officer (CEO) of RSS, the sole owner of RE, and the CEO of BoxDrop, an Ohio limited liability company owned by RSS.  See Andrew Decl. ¶ 8; see also Justman Decl., Ex. A.  Mr. Andrew stated in his declaration filed in the California Action that "[n]early all inventory of goods or promotional materials bearing [RE's] mark are located at RSS and BoxDrop's shared corporate headquarters in Dublin, Ohio, with some stored in my home in Tennessee." See id.

In addition to RE's representations that it has engaged in business in Ohio such that a federal court in Ohio can exercise personal jurisdiction over it, see Response at 4-5; see also Reply, EMI affirmatively alleges the same in the Ohio Action.  See Bachstein v. Discord, Inc., 424 F. Supp. 3d 1154, 1157 n. 1 (M.D. Fla. 2019) (citation omitted) ("On a motion to transfer venue, the Court is permitted to consider materials outside the pleadings.").  EMI's claims in the instant action are closely related to those in the Ohio Action, in which EMI alleges that RE's RUGGED ENTREPRENEUR mark is used to conduct

business in Ohio as well as used on apparel and goods sold to residents of the district.  <u>See</u> Entrepreneur Media, Case No. 2:21cv4162, Docket No. 1 ¶¶ 49, 51-54.  EMI also alleges that BoxDrop and Mr. Andrew use RE's mark to sell BoxDrop franchise opportunities to individuals in Ohio and that there are several BoxDrop franchises operating in the state.  <u>See id.</u> ¶ 42.  In the instant action, EMI also alleges that RE owns the domain name that markets these franchising opportunities using the RUGGED ENTREPRENUER mark.  Complaint ¶ 36.  Upon review of the RSS Trademark Agreement, RE's unrefuted assertions in the Motion and Reply, and EMI's allegations in its relevant pleadings, the Court finds that RE sufficiently transacted business in Ohio such that the Southern District of Ohio could have exercised personal jurisdiction over EMI's claims.  <u>See</u> Ohio Rev. Code § 2307.382.

Having determined that the Southern District of Ohio's exercise of personal jurisdiction over RE is within the limits of Ohio's long-arm statute, the Court must next determine whether it "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" <u>Mut. Serv. Ins. Co.</u>, 358 F.3d at 1319 (quoting <u>Sculptchair, Inc.</u>, 94 F.3d at 626).

13

A determination of whether exercising personal jurisdiction comports with the requirements of due process requires yet another two-part inquiry. See Sculptchair, Inc., 94 F.3d at 630-31 (11th Cir. 1996). First the Court looks to see whether RE has sufficient "minimum contacts" with the State of Ohio. See id. at 630. In Licciardello, the Eleventh Circuit explained that:

> [t]he Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there. This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there.

Licciardello, 544 F.3d at 1284 (internal citations omitted). Second, the Court determines whether the exercise of jurisdiction over the defendant "would offend 'traditional notions of fair play and substantial justice.'" Sculptchair, Inc., 94 F.3d at 630-31 (quoting Robinson, 74 F.3d at 258). Relevant factors in this inquiry "include 'the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief.'" See id. at 631 (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987)).

Turning first to the "minimum contacts" prong, "[j]urisdiction may be constitutionally asserted over the nonresident defendant whenever he has by his own purposeful conduct created a 'substantial connection' with the forum state." Licciardello, 544 F.3d at 1285. Indeed, even a single act can support

14

jurisdiction, "so long as it creates a substantial connection with the forum." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

> Under the minimum contacts test for purposeful availment, we assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria.

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1357 (11th Cir. 2013) (citations omitted).  As discussed above, RE's agreement with RSS, an Ohio corporation, to grant RSS a license to use RE's RUGGED ENTREPRENEUR mark "in connection with the sale of apparel, including hats and shirts, on: (1) the website www.ruggedentrepreneur.com; and (2) in person to the various persons and business with which [RSS] enters into license and/or franchise agreements . . ." directly gives rise to EMI's claims of trademark infringement. RSS's use of RE's mark pursuant to this agreement comprise the infringing activities that EMI alleges in this action as well as the Ohio Action.  By entering into this agreement, RE purposely availed itself of the privileges of doing business in Ohio and because of the rights RE granted to RSS to use its mark in Ohio, RE could reasonably anticipate being haled into court there.

Upon weighing the respective burdens and interests in this case, the Court also determines that an Ohio court exercising personal jurisdiction over RE does not "offend 'traditional notions of fair play and substantial justice.'" Sculptchair, Inc., 94 F.3d at 630-31 (quoting Robinson, 74 F.3d at 258). To the extent EMI argues to the contrary, its argument is based on the fact that RE also had contacts in Florida. Response at 5-6. However, such an argument does not render the exercise of jurisdiction unconstitutional. See Burger King Corp., 471 U.S. at 483 (one state's interest in an action does not necessarily render another state's exercise of jurisdiction unconstitutional). In consideration of all the circumstances and interests, the Court determines that RE has "minimum contacts with [Ohio] and that the exercise of jurisdiction over [it] does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co., 358 F.3d at 1319 (quoting Sculptchair, Inc., 94 F.3d at 626). Accordingly, the exercise of jurisdiction over RE would comply with the constitutional requirements of due process. See id. (citing Sculptchair, Inc., 94 F.3d at 626). Moreover, personal jurisdiction is a waivable defense. See Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990). And in the Motion, RE represents that in the California Action it advised EMI and the court that it would consent to the jurisdiction of the Eastern Division of the Southern District of Ohio. See Motion at 3. As such, the Court finds that the personal

16

jurisdiction requirement is satisfied for purposes of determining whether the action could have been brought in Ohio.

As to whether venue would be proper in the Southern District of Ohio, EMI's argument that some of RE's infringing activities occurred in Florida does not preclude a finding that a substantial part of the events giving rise to the trademark infringement claims occurred in Ohio.  28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject to the court's personal jurisdiction with respect to such action."); see also Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003) (finding that the venue statute "contemplates some cases in which venue will be proper in two or more districts.").  As discussed above, RE has shown that its licensing arrangement with RSS and BoxDrop permitted them to use RE's mark in a way that directly gave rise to the alleged infringing activities.  RSS and BoxDrop facilitate RE's mark being sold and marketed out of their headquarters in Franklin County where it stores the goods and promotional materials for distribution.   Franklin County lies in the Southern District of Ohio.  Accordingly, the Court finds that venue would be proper in the Southern District of Ohio pursuant to § 1391(b)(2).   Finally, the Southern District of Ohio would have subject matter jurisdiction over EMI's claims based on federal question jurisdiction and supplemental jurisdiction, which EMI does

not refute.  In light of the foregoing, the Court finds that RE has met its burden of demonstrating that the action could have been brought in the Southern District of Ohio.  The Court turns next to whether transfer to the Southern District of Ohio is for the convenience of the parties and witnesses and in the interest of justice.  See Eye Care Int'l, Inc., 119 F. Supp. 2d at 1318.

### b. Fairness and Convenience Factors

### i. The Convenience of the Witnesses and Parties

RE asserts that this case should be transferred to the Southern District of Ohio because "[t]here are no RE employees or potential witnesses in Florida." Motion at 6.  In addition, any witness that RE might call in the Florida Action, "will also be utilized in the case pending in Ohio," and one of them resides in the Southern District of Ohio.  Id.  RE argues that it is merely a holding company for the RUGGED ENTREPRENEUR mark, and any witnesses will be employees or agents of BoxDrop or RSS, both defendants in the Ohio Action. See id.  Ultimately, RE contends that transferring this action to the Southern District of Ohio will not impose any additional burden on potential witnesses; instead it will relieve witnesses of the burden of traveling to testify at parallel trials.  Id. at 7.  As to the convenience of the parties, RE concedes that as a Florida limited liability company, litigating in Florida does not create a hardship.  Id.  However, Ohio is more convenient "because of the

interrelatedness of EMI's claims against RE, Andrew and Boxdrop." Id. (citation omitted).

In its Response, EMI argues that "just because [RE] licensed the mark to entities in Ohio does not mean that Ohio is the most appropriate forum to litigate the parties dispute." Response at 7. Additionally, EMI expresses the view that RE is evading being hailed into a Florida court. Id. Further, EMI offers to conduct virtual depositions and asserts that most witnesses already must travel for trial anyway. Id. at 8. EMI contends that the witnesses identified by RE are "essentially party witnesses with little bearing on this analysis." Id. According to EMI, RE is merely attempting to improperly forum shop. Id. at 10, 12. As to the convenience of the parties, in addition to reiterating its forum shopping contention, EMI asserts:

> It is absurd for Defendant to argue that it is not convenient to litigate in its home state of Florida. If it desired to avoid litigation in Florida, it should not have incorporated here. To find otherwise would allow it to enjoy all the benefits of Florida law, while completely shirking the duties imposed on it by Florida law. That cannot be tolerated.

Id. at 12.

A significant factor under § 1404(a) is the convenience of witnesses, "and the moving party must make a specific showing of inconvenience to witnesses to succeed in requesting a venue transfer." Laica-Bhoge v. Eli Lilly & Co., No. 6:14-CV-1286, 2015 WL 3919515, at *5 (M.D. Fla. June 25, 2015) (quoting Elec.

Transaction Network v. Katz, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989) (internal quotations omitted)).   Neither party has identified any specific witnesses that are located in Florida, however, at least one witness, Jerry Williams, resides in the Southern District of Ohio. See Motion at 6.  Moreover, RE submits that it will require the same witnesses in both the Florida and Ohio Actions and that the witnesses it will rely on will be employees of its sister companies in Ohio.  See id.  EMI's contention that the witnesses will have to travel whether the action is in Florida or Ohio misconstrues RE's position regarding the convenience factor.  The defendants have not filed a motion to transfer venue in the Ohio Action.  If the Court denies the Motion here, the two actions will proceed separately before different courts, and any witnesses will have to travel to both the Middle District of Florida and the Southern District of Ohio to testify in both proceedings.  Without question that would prove to be inconvenient for the witnesses.  As such, the Court concludes the convenience of the witnesses weighs in favor of transfer.

As to the convenience of the parties, RE does not appear to contend, nor does this Court find, that the Middle District of Florida is an inconvenient forum for a Florida limited liability company to litigate. Rather, RE asserts that requiring the parties to travel to both Ohio and Florida would be inconvenient for both parties.  EMI is a California citizen so neither Ohio nor Florida appears to be a convenient location for it to litigate.  However, litigating in one state

20

would seem to be more convenient than litigating in two states at the same time.  Nevertheless, because RE has not shown that litigating in this forum would be unduly burdensome and both forums are comparably inconvenient for EMI, the Court finds that this factor is neutral.

### ii. Location of Documents and Relative Ease of Access to Sources of Proof

RE acknowledges that this factor is largely insignificant due to advances in technology neutralizing prior obstacles to obtaining documents and other sources of proof.  Motion at 7.  Nonetheless, RE contends that whatever weight is given to this factor favors transfer because the merchandise alleged to contain infringing marks is in Ohio.  Id.  EMI maintains that RE has failed to identify any difficulty in transporting such evidence to Florida.   Response at 12.  Further, EMI asserts that "substantial activities have occurred in Florida, and evidence related to those activities may not be easy to obtain from Ohio."  Id.  As an example, EMI cites to Mr. Andrew's Declaration from the California Action, which was included as an exhibit to the Justman Declaration.  See Justman Decl., Ex. A.  EMI represents that in his Declaration Mr. Andrew stated that RE operates its website and social media accounts out of Florida and also held a conference in Florida. As such, according to EMI, evidence regarding the conference attendees would be located there.  Response at 11-12.  Upon review, the relevant excerpt from Mr. Andrew's Declaration states:

22. Besides these 8 hats, the only other trademarked goods that have been distributed bearing the RUGGED ENTREPRENEUR mark have been shirts and hats that were distributed free of charge to RSS licensees and franchisees at national conferences held by RSS in Mexico, Texas, Kentucky and Florida. In addition, some quantities of these goods have been personally given away by me in conjunction with people whom I have identified as Rugged Entrepreneurs.

23. Nearly all inventory of goods or promotional materials bearing the RUGGED ENTREPRENEUR mark are located at RSS and BoxDrop's shared corporate headquarters in Dublin, Ohio, with some of the goods stored in my home in Tennessee.

24. RE's www.ruggedendentrepreneur.com and www.ruggedentrepreneurnation.com domain names, as well as all related social media accounts, have been operated out of RE's principal place of business in Palm Coast, Florida or my current domicile in Tennessee at all times since these websites and social media accounts were established.

See Entrepreneur Media, Inc. v. Rugged Entrepreneur, LLC, et al., Case No. 8:21-cv-390, Docket No. 20-3 ¶¶ 22-24 (June 9, 2021).  Accordingly, it appears that evidence related to conference attendees, to the extent it is relevant, would be in Mexico, Texas, Kentucky, or Florida.  Evidence regarding the operation of RE's website and social media account, is in Florida or Tennessee, but likely would be primarily electronically stored information not entitled to much weight for purposes of the analysis under this factor.  Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (acknowledging modern technology has reduced the importance of the location of relevant documents and the relative ease of access to sources of

proof).  Notably, the physical evidence of the allegedly infringing merchandise is in Ohio.  As this is the only physical evidence identified that would potentially require transportation, this factor weighs, even if only slightly, in favor of transfer to the Southern District of Ohio where the evidence is located.

### iii.  Locus of Operative Facts

In the Motion, RE asserts that "the allegedly infringing use of these marks has occurred equally in Ohio as it has in Florida." Motion at 8.  Although RE, a Florida limited liability company, owns the RUGGED ENTREPRENEUR mark, RSS and BoxDrop, an Ohio corporation and limited liability company, own two of the websites that EMI identified in the Complaint as using the RUGGED ENTREPRENEUR mark. Id.  BoxDrop specifically owns the website www.boxdropdirect.com, from which customers can purchase the merchandise containing the allegedly infringing mark. Id.  Further, RE does not conduct any operations in Florida other than owning the RUGGED ENTREPRENEUR mark. Id.  According to RE, the Ohio companies are responsible for the conferences, distribution of goods, and the use of the mark for marketing and franchising. Id.  As such, RE contends the locus of operative facts is in Ohio. Id.

In the Response, EMI emphasizes that RE resides in Florida and has its principal place of business in Florida, which EMI contends is relevant to the inquiry here because RE is the sole owner of the infringing mark.  Response at

13.   EMI cites to Mr. Andrew's Declaration from the California Action twice for his statement that, "RE's www.ruggedentreprenuer.com and www.ruggedentrepreneurnation.com domain names, as well as all related social media accounts, have been operated out of RE's principal place of business in Palm Coast, Florida."  Id. at 13-14.   However, EMI omits the remainder of Mr. Andrew's statement in which he concludes, ". . . or my current domicile in Tennessee at all times since these websites and social media accounts were established."  Andrew Decl. CA ¶ 24.   EMI also disregards Mr. Andrew's statement in the paragraph above, that "[n]early all inventory of goods or promotional materials bearing the RUGGED ENTREPRENEUR mark are located at RSS and BoxDrop's shared corporate headquarters in Dublin, Ohio, with some of the goods stored in my home in Tennessee."  Id. ¶ 23.   "Typically, the locus of operative facts in intellectual property infringement cases is where the 'allegedly infringing product was designed, developed, and produced.'"  Seal Shield, LLC v. Otter Prod., LLC, No. 6:13-CV-967-ORL-37, 2013 WL 6017330, at *3 (M.D. Fla. Nov. 13, 2013) (quoting Carroll v. Texas Instruments, Inc., 910 F. Supp. 2d 1331, 1339–40 (M.D. Ala. 2012)); see also Dohler S.A. v. Guru, No. 16-23137-CIV, 2017 WL 4621098, at *8 (S.D. Fla. Oct. 16, 2017) (citations omitted) ("Courts in this district have acknowledged that the locus of operative facts in a trademark infringement action is often the headquarters of the allegedly infringing entity, where design and development

of the product at issue took place.").   Accordingly, because the entities promoting, marketing, conducting business using, and developing the merchandise containing RE's allegedly infringing mark are headquartered in Ohio and the infringing products are located in Ohio, the Court finds that the locus of operative facts occurred there.   As such, this factor weighs in favor of transfer.

### iv.  The Court's Ability to Compel the Attendance of Unwilling Witnesses

RE contends that the Court's ability to compel the attendance of unwilling witnesses weighs in favor of transfer because no unwilling non-party witnesses have been identified.  Motion at 9.  According to RE, this means "witnesses for both parties can present singular testimony in the Southern District of Ohio." Id.   Conversely, EMI contends that the lack of unwilling witnesses demonstrates that RE has not shown that this factor favors transfer.  Response at 14.  EMI also argues that although RE identified a non-party witness that resides in Ohio, he "is essentially a party witness," and his residency "should be of no consequence" since EMI has offered to depose him remotely.  Id. at 15. EMI insists that it will investigate RE's use of the mark in Florida and will subpoena non-party witnesses in Florida such as Florida conference attendees, who could not be compelled to testify if the case is transferred to Ohio.  Id.

EMI has not identified any specific witness that it expects to testify that is within the reach of this Court's compulsory process.  At least one defense witness resides in the Southern District of Ohio.  Although EMI contends that it will call witnesses who attended the Florida conference, that does not mean those witnesses reside in Florida or are within the compulsory process of either this District or the Southern District of Ohio.  However, because neither party has identified an unwilling witness, the Court finds this factor to be neutral.

### v. The Relative Financial Means of the Parties

In the Motion, RE "concedes that this is a neutral factor."  Motion at 9. EMI similarly maintains that this factor "at worst, is neutral." Response at 16.[3] Based on the information before the Court, the Court cannot conclude that either EMI or RE is financially better able to litigate in the Middle District of Florida or the Southern District of Ohio.  Thus, the Court finds this factor has no effect on the evaluation here.

---

[3]     In the Response, EMI insists that RE could have avoided any increased costs from litigating in both courts if RE and the defendants in the Ohio Action had consented to the California court's jurisdiction. Id. at 16.  According to EMI, RE can still remedy the issue by consenting to proceed in the Central District of California. Id.  This argument does not address the relative financial means of RE or EMI, and is nevertheless unavailing because the California court has already transferred the California Action to the Southern District of Ohio and the Ohio Court has consolidated it with the Ohio Action.

### vi.  The Forum's Familiarity with the Governing Law

RE argues that the instant case primarily involves federal trademark law, with which the courts in the Middle District of Florida and the Southern District of Ohio are equally familiar.  Motion at 9.  Regarding the state law claims, RE contends that trademark infringement claims under the FDUTPA and Florida common law mirror the relevant federal legislation found in the Lanham Act.  Id.  Moreover, RE maintains federal courts are "equally capable of interpreting and applying the law of another state."  Id. (citing Ruble v. Garrison Prop. & Cas. Ins. Co., 2015 U.S. Dist. LEXIS 187823, at *4 (M.D. Fla. Jan. 22, 2015)).  In the Response, EMI asserts that "even assuming that federal courts are equally equipped to handle Plaintiff's federal claims, this 'factor is accorded little weight.'"  Response at 16 (citing Soliman v. Daimler AG, No. 609CV00947MSSKRS, 2010 WL 11506980, at *7 (M.D. Fla. Jan. 22, 2010)).  Additionally, EMI contends that the Middle District of Florida is better equipped to handle the Florida common law claim.  See id.

Both this action and the Ohio Action primarily concern federal trademark law.  See generally Complaint.  This District and the Southern District of Ohio are equally equipped to apply the governing federal law to EMI's claims.  See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1329 (M.D. Fla. 2010) (finding this factor makes no difference because district courts are equally knowledgeable regarding the governing law

27

where complaint alleges violations of federal statutes and common law without specifying any state's laws).  As to EMI's claim under the FDUTPA and Florida common law, RE is correct that courts apply the same legal standards to these state law claims as they do under the Lanham Act.  See Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1345 (11th Cir. 2012); see also Rain Bird Corp. v. Taylor, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (citations omitted) ("The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition under the Florida Registration and Protection of Trademarks Act (FRPTA), Florida Statutes § 495.151, and the [FDUTPA] are the same as those for federal claims of trademark infringement and unfair competition.").  As do courts considering claims under the ODTPA and Ohio common law.  See Bedford Auto Dealers Assn. v. Mercedes Benz of N. Olmsted, 2012-Ohio-927, ¶ 12 (citations and quotations omitted) ("[W]here claims are made under the Ohio common law and the deceptive trade practices statutes, Ohio courts are to apply essentially the same analysis as that applied in assessing the law of unfair competition under the federal statutes.").  Because the Southern District of Ohio is familiar with the federal standards that apply to the claims in this case, this factor does not weigh against transfer.

### vii.  Weight Accorded to Plaintiff's Choice of Forum

RE contends that EMI's choice of forum is inconsequential where every other factor is neutral or weighs in favor of transfer.  Motion at 10.  Additionally,

EMI has chosen "to allege practically identical claims based on the same underlying facts, against related defendants in multiple forums," including the forum to which RE seeks a transfer.  <u>Id.</u>  In response, EMI maintains that its choice of forum should not be disturbed unless it is "'clearly outweighed' by other considerations."  Response at 17 (citation omitted).  According to EMI, its choice of forum here "should be given substantial weight as Defendant resides in this forum and substantial infringing activities occurred in this forum."  <u>Id.</u>

A plaintiff's choice of forum is given considerable deference such that it should be disregarded only where that choice is "clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process."  <u>Response Reward Sys., L.C.</u>, 189 F. Supp. 2d at 1339 (internal citations omitted); <u>see also</u> <u>Ricoh Corp.</u>, 870 F.2d at 573 ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference."); <u>Robinson</u>, 74 F.3d at 260 ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). Here, EMI's choice of the Middle District of Florida as the forum for this action is clearly outweighed by other considerations.  Chiefly, that EMI has chosen to litigate interrelated claims in both the Middle District of Florida and the Southern District of Ohio, the district to which RE seeks transfer.  Without a doubt such a course of action increases costs to all concerned and unnecessarily duplicates the investment of judicial resources.  Thus, considerations of cost and

judicial economy weigh heavily in favor of transfer.  See Universal Turbine Parts, Inc. v. Putnam Cnty. Nat. Bank, No. CIVA 208CV975-MHT, 2009 WL 1357386, at *4 (M.D. Ala. May 14, 2009) (finding transfer appropriate where the case could be consolidated with a "highly related action already pending in that court" which "would not only save valuable judicial resources but would also save considerable private resources, as the parties would no longer be forced to simultaneously litigate overlapping cases in distant fora.").  Further, neither this District nor the Southern District of Ohio are EMI's first choice of forum, as evidenced by its request in the Response that RE and its former co-defendants simply consent to jurisdiction in the Central District of California.  In addition, none of the convenience factors weigh against transfer, the convenience of the witnesses weighs in favor of transfer, and for the reasons discussed below, the Court finds that the interests of justice and trial efficiency also make a transfer appropriate in this case.  Accordingly, the Court declines to afford EMI's choice of forum in the Middle District of Florida substantial weight under the specific circumstances presented here.

### viii.  Trial Efficiency and the Interests of Justice

RE argues that transferring this case to the Southern District of Ohio will be the most effective use of judicial resources and promote an efficient resolution of the claims.  Motion at 10.  Without transfer, RE notes that two courts will unnecessarily resolve duplicative claims and that for this reason

transfer is in the best interests of justice.  Id.  In response, EMI maintains that
the interests of justice and the entirety of the Manuel factors weigh against
transfer.  Response at 10-11.  Additionally, EMI argues that RE's cost concerns
could be remedied by consolidating the cases in California.  Id. at 11, 17.
According to EMI,

> whether the trial occurs here, in California, or in Ohio, the
> witnesses for Defendant and its related entities will need to travel.
> Only one of Defendant's witnesses would avoid travel if all matters
> were consolidated in Ohio, but that would then foist travel burdens
> on EMI.  Either the suits should all proceed independently, or be
> consolidated in California.  Anything else entirely disregards EMI's
> choice of forum, and allows Defendant to improperly forum shop
> and dictate the location of this litigation based on the convenience
> of one witness.

Id. at 17-18.  EMI's contentions are without merit.  The California court
determined that it lacked personal jurisdiction over BoxDrop and Mr. Andrew,
as such, the court transferred the California Action, and it has been
consolidated with the Ohio Action.  If the Court declines to transfer this case,
witnesses will be involved in two separate actions close to a thousand miles
apart and two separate courts will have to address the same controversy.
Transferring this action to the Southern District of Ohio accomplishes efficient
resolution of this matter for the courts, the parties, and the witnesses.  Where
EMI has chosen the forum to which Defendants seek transfer, and transfer will
prevent duplicate trials, inconsistent rulings, and unnecessary time and
expenses, the gains in judicial efficiency clearly outweigh EMI's choice of forum

in the Middle District of Florida.  See Cent. Money Mortg. Co. ÝIMC¨ v. Holman, 122 F. Supp. 2d 1345, 1347 (M.D. Fla. 2000) ("Since the pending action in Maryland involves the same central issue as well as parties and witnesses as the present case, it would be more expeditious to try both cases in the same forum.").  Indeed, it is in the interest of all parties to have one court address all of the related claims EMI brings against RE, BoxDrop, and Mr. Andrew.  See Chicken Kitchen USA, LLC v. Tyson Foods, Inc., Case No. 17-21503-CIV-WILLIAMS, 2017 WL 6760811, at *3-4 (S.D. Fla. Oct. 4, 2017) ("'Courts consider many things relevant to the interest of justice. One frequently mentioned is the desire to avoid multiplicity of litigation resulting from a single transaction or event.'" (quoting 15 Wright & Miller, supra, § 3854 (4th ed. 2013))).

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

Id. (citing Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960)); see also Darrin Cupo, D.M.D, P.A. v. Orthodontic Centers of Am., Inc., No. 07-23020-CIV, 2008 WL 11333240, at *8 (S.D. Fla. Apr. 17, 2008); see also Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc., 833 F. Supp. 882, 886 (M.D. Fla. 1993) ("[A]ll parties and witnesses would be greatly burdened if all were required to

travel between two forums because the two related cases in which they all were involved were being tried in different states. Avoiding the parties' and witnesses' inconvenience and expense in this respect, as well as preserving judicial economy and resources, mandates that in the interest of justice this action should be transferred . . .").  For all these reasons, the Court finds that transfer to the Southern District of Ohio furthers trial efficiency and best serves the interests of justice.

## IV.   Conclusion

In consideration of the foregoing, the Court finds that the inconvenience of litigating parallel cases in two separate forums both of which EMI has chosen, weighs in favor of transfer.  RE has met its burden of showing that this action could have been brought in the Southern District of Ohio and the interests of justice and judicial efficiency warrant transferring this case there. Accordingly, RE's Motion is due to be granted.

In light of the foregoing, it is

**ORDERED:**

1. Defendant Rugged Entrepreneur, LLC's Motion to Transfer Venue with Supporting Memorandum of Law (Doc. 29) is **GRANTED.**

2. The Clerk of the Court is **DIRECTED** to transfer this action to the Eastern Division of the United States District Court for the Southern District of Ohio and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on May 26, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28

Copies to:
Counsel of Record

34